UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MARY SEXTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:09CV00008 AGF |
| | ) |
| CITY OF HANNIBAL, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

In this case, Plaintiff Mary Sexton claims that she was fired from her job with the City of Hannibal ("the City") at the Hannibal Convention and Visitors Bureau ("HCVB") in violation of her First Amendment rights, her equal protection rights, Missouri common law for wrongful discharge ("whistleblowing"), the Missouri Human Rights Act, and Title VII of the Civil Rights Act of 1964. Now before the Court are the motions for summary judgment filed by Defendant Beau Hicks, the Executive Director of the HCVB; and the motion for partial summary judgment filed by the remaining Defendants -- the City, the members of the HCVB Board of Directors (Jim Behrens, Bob Gilstrap, Beth Knight, Steve Ayers, Melanie Campbell, Steve Terry), and the City Manager (Jeff LaGarce) (collectively referred to herein as the "Hannibal Defendants"). In the latter motion, in addition to seeking partial summary judgment along with the other Hannibal Defendants, Defendant Terry seeks summary judgment on all claims. For the reasons set

forth below, both motions shall be granted in part and denied in part.

## BACKGROUND

As motions for summary judgment are under consideration, the Court describes the facts in the light most favorable to Sexton. *See, e.g.*, *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 413 (8th Cir. 2010). Sexton began working for the City in 1997 as a secretary. On May 31, 2005, she was transferred to HCVB, where her title was Tour and Travel Manager. In approximately October 2007, Terry, who was then the president of the HCVB Board of Directors, began to bother Sexton and complain about her job performance allegedly to get her to leave the job so that his daughter could be hired in Sexton's place. Sexton complained to Hicks and LaGarce about Terry's conduct, but no action was taken to rectify the situation.

On October 10, 2008, Plaintiff reported to the Hannibal Police Department that Terry was harassing/stalking her. She was advised to keep a record of such behavior; ultimately nothing was done on the matter. On October 24, 2008, Sexton reported to the police that money was missing from the HCVB petty cash fund. At the direction of the police, Sexton reported her concerns about the missing money, to LaGarce and the City Clerk, Angelica Zerbonia. Sexton told them that she suspected that Hicks was responsible for the missing money, as well as for numerous other improper acts, including going to a local casino during work hours and using the HCVB van for personal use. LaGarce asked Hicks if he had engaged in any of the wrongdoing and Hicks denied it. This was the extent of LaGarce's investigation.

On November 10, 2008, the HCVB Board of Directors, which consisted of Defendants Behrens, Gilstrap, Knight, Ayers, Campbell, and Terry, met. Terry excused himself from the meeting because he knew that Sexton's complaints against him were going to be discussed. The remaining Board members then voted to go into closed session. Hicks was excused from the meeting, and Sexton was invited into the meeting. She was asked questions about her complaints regarding Terry, but not about her accusations against Hicks. She was then excused from the meeting and the Board members who were present voted unanimously to clear Hicks "of any wrongdoing pertaining to what was brought forth to" LaGarce and the City Clerk by Sexton, and to terminate Sexton due to dishonesty and making false and malicious statements about Hicks.

When Sexton was asked during her deposition whether she had any proof that Hicks had stolen money from the HCVB petty cash, Sexton responded that she "never accused him of taking money from anything." She testified that money was missing but that she "didn't know where it was going."

At all relevant times, the City was insured through a Missouri Intergovernmental Risk Management Association ("MIRMA") plan, which provides that it "does not apply to any claim or "suit' which is barred by the doctrines of sovereign immunity and/or official immunity . . . ." The plan also includes a section, "Employment Practices Liability Coverage," which provides coverage for "any loss which [the City] shall become legally obligated to pay as a result of any claim for [a] . . . wrongful act of termination."

All counts of Sexton's five-count amended complaint are brought against all Defendants, with the individual Defendants sued in their individual and official capacities. Counts I, II, and IV are brought under 42 U.S.C. § 1983. Count I asserts that Defendants fired Sexton in violation of her First Amendment rights for reporting her concerns about Hicks's wrongdoing to the police, LaGarce, and the City Clerk. In Count II, Sexton claims that Defendants conspired to protect Hicks and fire Sexton because of her constitutionally protected speech, and to treat her less favorably than male employees of the City in violation of her equal protection rights. In Count IV Sexton claims that Defendants' actions were taken due to her gender, in violation of her equal protection rights.

Count III asserts a Missouri state common law claim of wrongful discharge for whistleblowing. Lastly, in Count V, Sexton claims that Defendants fired her because of her gender, in violation of Title VII of the Civil Rights Act of 1964, and the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010, in that male employees of the City who, unlike her, had actually engaged in acts of misconduct, were not fired, but given lesser punishments, such as administrative leave without pay.

## DISCUSSSION

**Summary Judgment Standard**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is initially placed on the moving party to establish the absence of a genuine issue of material fact and that the party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252, (1986). The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id.* at 249. "However, '[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].'" *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, ___ F.3d ___, 2011 WL 1364477, at *3 (8th Cir. April 12, 2011) (quoting *Anderson*, 477 U.S. at 252).

**<u>The Hannibal Defendants' Motion for Partial Summary Judgment</u>**

The Hannibal Defendants move for summary judgment on the wrongful discharge claim under Missouri law (Count III). They argue that (1) sovereign immunity bars this claim against the City and the individual Defendants in their official capacities, and (2) this claim can only be brought against Sexton's actual former employer, which was the City, and not against the individual defendants in their individual capacities. The Court agrees with both contentions.

Under Missouri law, a municipality has sovereign immunity from whistleblower actions for wrongful termination, unless that immunity has been waived. *Brooks v. City*

*of Sugar Creek*, ___ S.W.3d ___, 2011 WL 976741, at *2 (Mo. Ct. App. W.D.) (March 22, 2011) (citing *Kunzie v. City of Olivette*, 184 S.W.3d 570, 574 (Mo. 2006). [W]hen a public entity purchases liability insurance for tort claims, sovereign immunity is waived to the extent of and for the specific purposes of the insurance purchased. *Id.* Sexton's argument that the "Employment Practices Liability Coverage" section of the MIRMA plan waives the City's sovereign immunity with regard to Count III is foreclosed by *Topps v. City of Country Club Hills*, 272 S.W.3d 409, 415 (Mo. Ct. App. 2008), which held that such a provision does not override a provision in the same policy stating that the policy is not meant to constitute a waiver of sovereign immunity.

Turning to the Hannibal Defendants' second argument, in *Taylor v. St. Louis Cnty. Bd. of Election Comm'rs*, 625 F.3d 1025, 1029 (8th Cir. 2010), the Eighth Circuit held that under Missouri law, only a plaintiff's actual employer was subject to suit for wrongful termination due to whistleblowing. *Id.* at 1028-29. Here, Sexton's actual employer was the City. Thus, the individual Hannibal Defendants are entitled to summary judgment on Count III in their individual capacities. *See id.*

**Terry's Motion for Summary Judgment**

Terry argues that he is entitled to summary judgment on all claims because he was not at the meeting when the decision was made to fire Sexton and there is no evidence to support a claim that he conspired with the other individual Defendants to fire her. To establish a § 1983 conspiracy claim, a plaintiff "must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of

constitutionally guaranteed rights." *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008) (quoting another source). "The question of the existence of a conspiracy to deprive [a plaintiff of her] constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a meeting of the minds or understanding among the conspirators to achieve the conspiracy's aims." *Id*. (affirming the district court's denial of a private party's motion for summary judgment on § 1983 conspiracy claim). Proof of a conspiracy will often consist only of circumstantial evidence. *Id.*

Here, the Court believes that, taking the facts in the light most favorable to Sexton, there remain genuine issues of material fact regarding whether Terry conspired with the other Defendants to fire Sexton for an unconstitutional reason. Accordingly, Terry's motion for summary judgment shall be denied.

**Hicks's Motion for Summary Judgment on Sexton's First Amendment Claim and Related Conspiracy Claim**

Hicks argues that Sexton's First Amendment retaliation fails as to him because Sexton's report to the police that Hicks was engaged in improper conduct involved "nothing more than personnel matters," and not matters of public concern; and Sexton spoke to the police as an employee pursuant to her official duties, and not as a public citizen. Hicks points to Sexton's deposition testimony that her job duties included identifying noncompliance with city regulations and making recommendation to correct

any noncompliance. He also asserts that the claim fails because it was the HCVB board, not him, that fired Sexton.

A public employee engages in speech protected under the First Amendment if she speaks "as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). This is a two-part question of law for the Court. *McGee v. Pub. Water Supply, Dist. #2 of Jefferson Cnty., Mo.*, 471 F.3d 918, 920 (8th Cir. 2006). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421.

Here, the Court concludes that Hicks's alleged wrongdoing was a matter of public concern. *See Garcetti*, 547 U.S. at 425 ("Exposing governmental inefficiency and misconduct is a matter of considerable significance."); *Lindsey v. City of Orrick, Mo.*, 491 F.3d 892, 899 (8th Cir. 2007) ("Criticism . . . of government officials and their policies clearly addresses matters of public concern").

The Court further concludes that Sexton spoke as a citizen when she reported Hicks's alleged wrongdoing to the police, and not as an employee, because, even accepting Hicks's characterization of Sexton's job duties, reporting her supervisor's alleged wrongdoing to the police was not part of her official duties. *See Thomas v. City of Blanchard*, 548 F.3d 1317, 1323-24 (10th Cir. 2008) (holding that when city building code inspector went beyond complaining to his supervisors about an impropriety in issuing a certificate of occupancy to the mayor, and threatened to report to a state investigative agency outside his chain of command, his speech ceased to be merely

pursuant to his official duties and became the speech of a concerned citizen; "The question under Garcetti is not whether the speech was made during the employee's work hours, or whether it concerned the subject matter of his employment. . . . Rather, it is whether the speech was made pursuant to the employee's job duties, or in other words, whether it was 'commissioned' by the employer") (quoting *Garcetti*, 547 U.S. at 421-22); *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008) (surveying post-*Garcett*i case law and concluding that complaints raised up the chain-of command in a public workplace are often viewed as being pursuant to one's job duties while "external communications" in which a public employee raises concerns to persons outside the workplace are "ordinarily not made as an employee, but as a citizen").[1]

Hicks is correct, however, that because he was not Sexton's employer, he cannot be liable under § 1983, for her termination. Thus, Hicks is entitled to summary judgment on Count I of Sexton's complaint. Hicks can, however, be liable, for conspiracy to violate Sexton's First Amendment rights. In this regard, Hicks argues that Sexton failed to produce sufficient evidence of his participation in such a conspiracy, to survive summary judgment on this claim. The Court concludes, as it did above in Terry's case, that, taking the facts in the light most favorable to Sexton, there remain genuine issue of

---

[1] Even speech on a matter of public concern by a public employee speaking as a citizen may be limited if "the statements are too damaging to the government's capacity to conduct public business to be justified by any individual or public benefit thought to flow from the statements." *Pickering v. Bd. of Ed. of Township High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563 (1968). Hicks, however, does not raise a *Pickering* argument in support of his motion for summary judgment.

material fact on whether Hicks conspired with the other Defendants to fire Sexton in violation of her First Amendment rights. The Court rejects Hicks's further argument that because no First Amendment violation was established, he is entitled to qualified immunity on this claim.

**Hicks's Motion for Summary Judgment on Sexton's Claim for Whistleblowing**

Hicks argues that Sexton's state law whistleblowing claim fails as to him because she admitted in her deposition that she has no evidence that Hicks stole any money, and because he was not the one who fired her. Hicks's second point is well-taken. As noted above, the Eighth Circuit has held that under Missouri law, only a plaintiff's actual employer was subject to suit for wrongful termination due to whistleblowing. *Taylor*, 625 F.3d at 1028-29. Here, Sexton's actual employer was the City. Thus, Hicks is entitled to summary judgment on Count III of the complaint.

**Hicks's Motion for Summary Judgment on Sexton's Remaining Claims**

Hicks argues that he is entitled to summary judgment on Sexton's claims based on the equal protection clause, Title VII, and the MHRA because Sexton has adduced no evidence that she was treated differently than similarly situated male employees, and because he was not the one who fired Sexton.

As Hicks argues and Sexton concedes, individual liability does not exist under Title VII. Accordingly, Hicks's motion for summary judgment shall be granted on that aspect of Count V. Sexton's remaining claims based upon gender discrimination also fail as to Hicks because he did not supervise or have any part in the disciplinary decisions

with regard to the male employees of the City whom Sexton asserts were more favorably treated than she was.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Hannibal Defendants' motion for partial summary judgment is **GRANTED** with respect to Count III, and **DENIED** in other regards with respect to Defendant Terry. [Doc. #69]

**IT IS FURTHER ORDERED** that Defendant Hicks's motion for summary judgment is **GRANTED** as to Counts I, III, IV, V, and Count II based upon an alleged equal protection violation, and **DENIED** as to Count II based upon an alleged First Amendment violation. [Doc. #66]

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of May, 2011.